The defendant was indicted at the district Court of Richmond, in September 1806, for a misdemeanor in fraudulently obtaining *41 from the bank of Virginia a bank note of one hundred dollars. The indictment consisted of two counts. The first charged that he did apply at the bank of Virginia, and did falsely pretend and affirm that he was authorized and directed by George Wythe to apply to the cashier of the said bank for the sum of one hundred dollars, for the use of the said George Wythe, the said G. W. having money to a greater amount deposited there, and that the defendant a certain false and counterfeit letter partly written and partly printed in the name of the said G. W. as a true letter of the said G. W. falsely and fraudulently did deliver to a certain W. D. teller of the said bank, &c., by which said false and counterfeit letter it was mentioned, that the said G. W. directed the cashier of the bank of Virginia to pay to himself or bearer, one hundred dollars ; and the said W. D. then and there believing the said counterfeit letter to be the true letter of the said G. W. and the signature to the said letter, and the writing in the body of the letter, to be the hand-writing of the said G. W., 147 did then and *there pay and deliver to the said G. W. Swinney, one hundred dollars in a note of the bank of Virginia, whereas in fact and truth G. W. never did write or send, or cause to be written or sent, the letter aforesaid to the said cashier, &c. And so the jurors, &c., do say that the said G. W. Swinney on the said27th day of May, 1806, by colour of the said counterfeit letter, and by the said false pretences, unlawful, falsely, fraudulently and deceitfully did obtain and get into his hands and possession, of and from the said W. D. teller, &c., the said sum of one hundred dollars, in the said note of the said bank, of the goods and chattels and monies of the president, directors and company of the said bank of Virginia, &c., &c., contra formam statute, "et contra pacem et dignitatem, &c.
The second count was exactly like the first, except that the writing by which the note of one hundred dollars was charged to have been obtained was described as “a false, feigned and counterfeit token, &c., to the similitude and likeness of a true check or order of him the said G. W., &c.”
The prisoner was found g'uilty by the jury, whereupon he moved to arrest the judgment, for the following reasons: “Because the offence is not within the statute under which the indictment is laid, inasmuch as,
“1st. The statute which was passed on the 18th November, *1789, (See Rev. Co. Vol. 1st, p. 45,) was intended to punish a pre-existing evil, which is represented as having become common, and which is minutely described in the preamble to the statute, to wit, ‘the falsely and deceitfully contriving, devising, and imagining, privy tokens and counterfeit letters, in other men’s names, unto divers persons, their particular friends and acquaintances,’ whereas banks were not introduced into this commonwealth, until many years after the said 18th November, 1789, and therefore could not have been within the contemplation, any more than they are within the language of the statute. In like manner the 33 Henry 8, ch. 1 (of which our statute is a copy) was enacted more than a century and a half before the existence of a bank in England.
“2d. The phraseology of the statute precludes the possibility of its application to banks : the terms ‘divers persons, their particular friends and acquaintances,’ can relate only to private individuals, not to a body coporate, an ideal body. The bank of Virginia is no more a person, than the commonwealth of Virginia; much less is it the particular friend and acquaintance of any one.
“3d. The statute requires that the person who shall be punished under it, shall 149 have gotten into his possession *the money, or goods of another : whereas, the defendant is charged with having gotten possession of a note of the bank of Virginia, which is neither the money or goods of the said George Wythe, because having been delivered under a check not drawn by him, the bank hath no right to charge it to his account: neither is it the money, or goods of the bank: but simply the promissory noie of the bank for the future payment of money, and as to all legal purposes, merely on a footing with the promissory note of an individual.”
The question arising from these reasons in arrest, was adjourned to the general court.
November 17th, 1806. The court, consisting of Judges Tyler, White, Carrington, Stuart, Brooke and Holmes, decided that “judgment on the verdict in the record mentioned ought to be arrested.”